IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Eduardo Benhur Ruiz,<br><br>    Petitioner,<br><br>vs.<br><br>Charles L. Ryan; et. al.,<br><br>    Respondents. | No. CV 07-2491-PHX-PGR (HCE)<br><br>**REPORT & RECOMMENDATION** |

Pending before the Court is Petitioner's *pro se* Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254 (Doc. No. 1). Pursuant to the Rules of Practice of this Court, this matter was referred to the undersigned Magistrate Judge for Report and Recommendation. For the following reasons the Magistrate Judge recommends that the District Court dismiss the Petition for Writ of Habeas Corpus as untimely.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

    A.    State Proceedings

        1.    Indictment and Conviction

On February 24, 2003, Petitioner was indicted, in Maricopa County, Arizona, for the following 14 felony counts arising from his sexual abuse of an 11-year-old girl: 12 counts of Sexual Conduct with a Minor, class 2 felonies and dangerous crimes against children (Counts 1, 3 through 7, and 9 through 14); and two counts of Sexual Abuse, class 3 felonies

and dangerous crimes against children (Counts 2 and 8). (Answer (Doc. No. 12), p. 2 & Exh. A; Answer, Exh. B, p.14).

On August 22, 2003, Petitioner pled guilty to two counts: amended Count 3 (Molestation of a Child, a class 2 felony and first-degree dangerous crime against children); and amended Count 5 (Attempted Sexual Conduct with a Minor, a class 3 felony and second-degree dangers crime against children.[1] (Answer, Exh. B, C). Under the plea agreement, Petitioner faced a minimum sentence of 10 years, a presumptive sentence of 17 years, and a maximum sentence of 24 years with regard to Count 3. (Answer, Exh. B, p.2). The plea agreement also set forth that Petitioner's sentence for Count 5 would consist of a term of supervised lifetime probation consecutive to Count 3. (Answer, p.2 & Exh. B, p.2). The State agreed to dismiss the remaining charges. (Answer, Exh. B, p.2).

On September 8, 2003, prior to sentencing, the trial court received a letter written in Spanish from Petitioner. (Answer, Exh. F, G). The trial court had the letter translated into English, construed it as a "request for change of counsel and a possible request to withdraw from the plea agreement", and set the matter for hearing. (*Id.*). On September 10, 2003,[2] also prior to sentencing, Petitioner filed a *pro se* Motion for Change of Counsel. (Answer, Exh. E). At an October 31, 2003 hearing on the matter, the trial court found that "there was a real breakdown in confidence, communication between you [*i.e.*, Petitioner] and Mr. Dewitt [*i.e.,*

---

[1]At the change of plea hearing, Petitioner's counsel indicated that Petitioner was a Spanish speaker, however, Petitioner told counsel that "he understood English well enough. We would conduct most of out [sic] business in English." (Answer, Exh. C, p.4). At the change of plea hearing, Petitioner agreed with the court's statement that he understood "some English." (*Id.* at p.3). A court interpreter was present at the change of plea hearing and the court directed Petitioner to "go ahead and answer in Spanish, so the court interpreter can do his job." (*Id.* at p.4).

[2]Citing the prison-mailbox rule, Respondents use the date on which Petitioner signed the motion. (*See* Answer, pp.4-5 n.1 (*citing Houston v. Lack,* 487 U.S. 266 (1988); *State v. Rosario,* 195 Ariz. 264, 266, 987 P.2d 226, 228 (App. 1999); *State v. Goracke,* 210 Ariz. 20, 22-23 & n.3, 106 P.3d 1035, 1037-38 & n.3 (App. 2005)).

defense counsel] and I'm granting your request for a new attorney to be appointed." (Answer, Exh. H, p.11; *see also* Answer, Exh. I).

On December 2, 2003, after Petitioner was appointed new counsel, the trial court held a hearing on the motion to withdraw from the plea agreement. (Answer, Exh. J, K, L). On that same date, the trial court entered an order denying the motion. (Answer, Exh. M).

At the April 27, 2004 sentencing hearing, the trial court denied Petitioner's renewed motion to withdraw from the plea agreement, sentenced Petitioner to an aggravated term[3] of 20 years of imprisonment on Count 3 and lifetime probation on Count 5 "beginning after discharge from the Arizona Department of Corrections in [sic] Count 3." (Answer, Exh. Q, p.2; *see also* Answer, Exh. P).

### 2. Post-Conviction Relief Proceedings

On June 1, 2004, Petitioner filed a timely *pro se* notice of post-conviction relief, and thereafter, counsel was appointed to represent him. (Answer, p.7 & Exh. R). On January 26, 2005, Petitioner, through counsel, filed his Petition for Post-Conviction Relief (hereinafter "of-right PCR Petition"[4]) pursuant to Rule 32.1 of the Arizona Rules of Criminal Procedure. (Answer, Exh. S). Petitioner raised the following claims in his of-right PCR Petition:

1. Petitioner was not informed of his right to have a jury determine all facts beyond a reasonable doubt used to aggravate his sentence, rendering his plea involuntary;

---

[3]The trial court found than an aggravated term was appropriate "because of the age of the victim, the fact that the victim was in a relationship of trust with the defendant that the defendant abused. The fact that he threatened her. The fact that he repeatedly abused her." (Answer, Exh. P, p. 12).

[4]*See Summers v. Schriro,* 481 F.3d 710, 716-17 (9th Cir. 2007) (using the term "Rule 32 of-right proceedings..." to refer to the initial post-conviction relief proceeding filed in lieu of a direct appeal by an Arizona defendant, like Petitioner herein, who has pled guilty). *See also* discussion, *infra,* at II.A.

2. The then-recent U.S. Supreme Court decision in *Blakely v. Washington,* 542 U.S. 296 (2004)[5] rendered Arizona sentencing statutes and Petitioner's sentence unconstitutional thus requiring that Petitioner's sentence be vacated; and

3. "Should the State Argue and this Court Finds [sic] that *Blakely* Is Not a Change in the Law, Defendant's Counsel Failed to Adequately Advise and Present to the Court Defendant's Rights to Jury Determination of Aggravators Used at Sentencing."

(*Id.*) (capitalization in original.).

On May 20, 2005, after Petitioner's of-right PCR Petition was fully briefed, the trial court held an "INFORMAL CONFERENCE" wherein the court determined that "the *Blakely* issue is not precluded in this matter...." (Answer, Exh. V, pp.1-2) (capitalization in original). The trial court further found

> no contested issue of law of [sic] fact with regard to the allegation of ineffective assistance of counsel. Nor does the Court finds [sic] any contested issue of law or fact on the issue of whether the Defendant's change of plea was involuntary because he did not know someday the United States Supreme Court would decide *Blakely. State v. Murdaugh,* 209 Ariz. 19 (2005).

(*Id.* at p.2). Therefore, the trial court dismissed the first and third grounds raised in Petitioner's of-right PCR Petition and set the *Blakely* claim (ground 2) for a status conference. (*Id.*). Thereafter, the trial court held another "informal conference" with counsel and ordered further briefing from the parties on the remaining *Blakely* issue. (Answer, Exh. Y). On July 29, 2005, after briefing concluded, the trial court found that Petitioner

> admitted that the victim was 11 years old. As part of the factual basis for the pleas, the defendant's attorney stated that the victim was a child of 11 years of age....When asked by the court if he agreed, the defendant responded in the affirmative....This aggravating factor is therefore *Blakely*-compliant. Its finding exposed the defendant to an aggravated sentence, and the court's consideration of additional aggravating factors in imposing a sentence within this range did not violate *Blakely*....

---

[5]Respondents point out that the Supreme Court's June 24, 2004 decision in *Blakely* was "published nearly 2 months *after*...[Petitioner's] sentencing, and 3 weeks *after* the filing of the notice of post-conviction relief)...." (Answer, p.7) (emphasis in original).

- 4 -

(Answer, Exh. CC, p.2). Therefore, the trial court dismissed Petitioner's of-right PCR Petition. (*Id.*).

Through counsel, Petitioner obtained three extensions of time to file either a motion for rehearing or a petition for review by the Arizona Court of Appeals regarding the trial court's dismissal of his of-right PCR Petition. (Answer, Exh. DD). According to Respondents, the last of these orders gave Petitioner until December 1, 2005[6] to do so. (*See Id.* (trial court's November 1, 2005 minute entry granting Petitioner "an additional 30 days"); Answer, p.8). Petitioner filed neither a motion for rehearing nor a petition for appellate-court review by December 1, 2005. (Answer, p.8 (*citing* Answer, Exh. SS)).

Instead, on November 22, 2005, Petitioner filed a *pro se* PCR Petition (hereinafter "Second PCR Petition") wherein he raised the following grounds:

1. The conditions of his confinement caused him to become mentally incompetent from February 14, 2003 to April 27, 2004 because of "harsh treatment such as: ...[he] was given only a meal and a half a day...", on August

---

[6]Pursuant to Rule 32.9 of the Arizona Rules of Criminal Procedure, Petitioner had 30 days from the trial court's denial of his of-right PCR Petition in which to file a petition for review. On three separate occasions, Petitioner requested an extension of "an additional thirty days." (Answer, Exh. DD). On the first occasion, the trial court granted Petitioner an extension of "30 days." (*Id.* (August 29, 2005 minute entry)). On the second and third occasions the trial court granted Petitioner "an additional 30 days." (Answer, Exh. DD (September 9, 2005 minute entry; November 1, 2005 minute entry)). It appears that Respondents determined the deadline for Petitioner's petition for review by calculating the deadline from the date of the minute entry granting such extension. This Court reads the trial court's granting of an extension of "an additional 30 days" to mean that Petitioner is granted 30 days in addition to the pre-existing deadline, not 30 days from the date of the minute entry granting such extension. Under this Court's interpretation, calculation of the three 30-day extensions granted to Petitioner would result in a November 28, 2005 deadline for the filing of Petitioner's petition for review. *See* Ariz.R.Crim.P. 1.3(a) (excluding from such calculation deadlines ending on a Saturday, Sunday or holiday in which case the period shall run until the next day which is not a Saturday, Sunday or holiday). This difference in deadlines has no real bearing on the outcome of this action given that under either calculation the Petition is untimely as discussed within this Report and Recommendation, *infra*, at II. A.-C. Because Respondents' calculation is more generous to Petitioner, the Court will accept December 1, 2005 as the date when Petitioner's petition for review was ultimately due.

- 5 -

|   |     | 22, 2003 he was denied a meal which caused him to have "stomach pains and fatigue...", at other times the food he was given made him ill or he was given rotten or moldy foods, and other inmates "would bully...Petitioner to give his food to them..." and the only relief Petitioner could obtain from such conditions was to enter into the plea agreement, and he expressed to counsel his desire to go to trial; |
|---|---|---|

2. Double jeopardy;

3. Because the jail was "unsafe..." Petitioner was denied his "right to[] test, review and sample documents that were in possession of [his] public defender...";

4. Breakdown of communications with counsel Dewitt;

5. "The translator wrongly told the Petitioner he could withdraw from the plea of guilt";

6. Petitioner's sentence was "racially motivated";

7. Petitioner did not know, nor did the translator disclose, that he had the right to have a jury determination of aggravating factors under *Blakely*;

8. The court's failure to grant Petitioner's requests for a Spanish-speaking attorney resulted in "unknowing[,] unintelligent decisions...";

9. The translator's emphasis of the term "withdraw" when discussing the plea agreement led Petitioner to believe he could withdraw from the plea agreement;

10. Petitioner would not have entered a guilty plea if he had been informed that he could be deported to Mexico;

11. Petitioner was not informed that "probation would be strict sex offender terms...";

12. Petitioner's attorney "lied to the translator or the translator didn't interpret what the public defender said" because Petitioner thought he was pleading

|   |     | guilty to two counts of "attempted....Petitioner had no ideal [sic] what he had agreed to..."; and |
|---|-----|---|
|   | 13. | Ineffective assistance of trial counsel because of counsel's failure to visit Petitioner with a translator. |

(Answer, Exh. EE).

On December 7, 2005, the trial court dismissed Petitioner's Second PCR Petition for failure to present a colorable claim for relief. (Answer, Exh. FF). Through counsel, Petitioner obtained an extension until February 6, 2006[7] to file either a motion for rehearing or a petition for review by the Arizona Court of Appeals regarding the trial court's dismissal of his Second PCR Petition. (Answer, Ex. GG, HH (trial court's December 22, 2005 minute extending deadline for "an additional 30 days.")). Petitioner filed neither a motion for rehearing nor a petition for appellate-court review by February 6, 2006. (Answer, p.9 (*citing* Answer, Exh. SS)).

On October 2, 2006, Petitioner filed with the state trial court, a *pro se* "Notice of Filing Petition for Review, Post-Conviction Relief Proceeding" regarding the trial court's July 29, 2005 dismissal of Petitioner's of-right PCR Petition. (Answer, Exh. II). On that same date, Petitioner filed the following with the Arizona Court of Appeals: (1) a *pro se* Petition for Review of the trial court's July 29, 2005 dismissal of his of-right PCR Petition;

---

[7]Petitioner had 30 days from the trial court's denial of his Second PCR Petition in which to file a petition for review. Ariz.R.Crim.P. 32.9(c). On December 12, 2005, Petitioner requested an extension of "an additional thirty days." (Answer, Exh. GG). On December 22, 2005, the trial court extended the deadline "an additional 30 days." (Answer, Exh. HH). Respondents calculate the extended deadline as January 23, 2006. (Answer, p.9) As discussed, *supra*, at. n. 6, this Court reads the trial court's order as granting 30 days in addition to the 30 days Petitioner had under Ariz.R.Crim.P. 32.9(c) to file a petition for review and not 30 days from the date of the trial court's order granting such extension. Under the Court's calculation, taking into account the extension, Petitioner had until February 6, 2006 to file his petition for review. *See* Ariz.R.Crim.P. 1.3(a). This difference in deadlines has no real bearing on the outcome of this action given that under either calculation the Petition is untimely as discussed within this Report and Recommendation *infra*, at II. A.-C. Because the Court's calculation is more generous to Petitioner, the Court will deem February 6, 2006 as the date when Petitioner's petition for review was due.

and (2) a *pro se* "Motion to Accept Untimely Petition for Review." (Answer, Exh. JJ, KK). On November 21, 2006, the appellate court denied Petitioner's Motion to Accept Untimely Petition for Review "without prejudice to filing a motion in the trial court." (Answer, Exh. LL (noting that "[t]he trial court may, 'after being presented with proper evidence, allow a late filing' if it finds that petitioner was not responsible for the untimely filing. *See State v. Pope,* 130 Ariz. 253, 255, 635 P.2d 846, 848 (1981).") Petitioner filed neither a motion in the trial court to allow a late filing nor did he file a petition for the Arizona Supreme Court to review the appellate court's dismissal. (*See* Answer, p.10 (*citing* Answer, Exh. SS)).

On November 28, 2007, ten days after filing the instant federal Petition, Petitioner filed another *pro se* PCR Petition (hereinafter "Third PCR Petition") with the state trial court. (Answer, pp.10-11 n.7 & Exh. MM). Therein, Petitioner argued that his guilty plea must be set aside because "attempted sexual conduct with an eleven year old is not encomposed [sic] by A.R.S. § 13-604.01 the dangerous crimes against children statute under which [Petitioner]...was sentenced." (Answer, Exh. MM, p1). On December 21, 2007, the trial court dismissed Petitioner's Third PCR Petition as both untimely and precluded under Rule 32.2(a) of the Arizona Rules of Criminal Procedure "because this claim either was or should have been raised in [Petitioner's]...prior Rule 32 proceeding." (Answer, Exh. NN).

On December 27, 2007, Petitioner filed a *pro se* Notice of Appeal with the trial court regarding its dismissal of his Third PCR Petition. (Answer, Exh. OO). On January 8, 2008, the Clerk of Court for the Arizona Court of Appeals sent Petitioner a letter stating that Petitioner had 30 days to file a proper petition for review. (Answer, Exh. PP). On January 23, 2008, Petitioner filed a petition for review of the trial court's dismissal of his Third PCR Petition. (Answer, Exh. QQ). The status of this action is unclear on the instant record. (*See* Answer, pp.10-11 n.7). Respondents point out that "[t]he claim raised in Petitioner's third post-conviction proceeding is not one of the three claims that he raises in the pending federal habeas petition." (*Id.*).

1. B. Petitioner's Federal Petition for Writ of Habeas Corpus

The instant *pro se* Petition for federal habeas relief was signed by Petitioner on November 18, 2007 and filed-stamped by the Clerk of the Court on December 10, 2007. (Doc. No. 1). A federal habeas petition is deemed filed when handed by the inmate to a prison official for mailing. *See Houston,* 487 U.S. at 270-71; *Patterson v. Stewart,* 251 F.3d 1243, 1245 n.2 (9th Cir. 2001) ("Under the prison mailbox rule...a *pro se* petitioner's petition is deemed constructively filed at the moment it is delivered to prison officials to be forwarded to the court clerk.") The Court deems the Petition commencing this action as filed on November 18, 2007. *See id.*

Petitioner raises the following grounds for relief:

1. Petitioner's conviction or sentence violated the Sixth Amendment, *Blakely v. Washington,* 542 U.S. 296 (2004), and *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), because the trial court based its decision to aggravate Petitioner's sentence on facts not admitted by Petitioner or found by a jury;

2. Petitioner's conviction or sentence violated the Sixth Amendment and *Brady v. United States,* 397 U.S. 742 (1970), because Petitioner's plea was not knowingly or voluntarily made and because the trial court refused to set aside his plea; and

3. Petitioner's conviction or sentence violated the Sixth Amendment and *North Carolina v. Alford,* 400 U.S. 25 (1970), because the trial court did not permit Petitioner to withdraw from the plea even though "[n]o proof or evidence of strong guilt was presented...during sentencing, or assertion of innocence while plea was entered into record...."

(Petition)

Respondents filed their Answer (Doc. No. 12) on May 27, 2008. Petitioner did not file a Reply.

## II. DISCUSSION

Respondents argue that the Petition is time-barred under the Antiterrorism and Effective Death Penalty Act (hereinafter "AEDPA"). Alternatively, Respondents argue that all of Petitioner's claims are procedurally defaulted.

### A. Commencement of AEDPA Statute of Limitations

The "AEDPA imposes a one-year statute of limitations on habeas corpus petitions filed by state prisoners in federal court." *Patterson,* 251 F.3d at 1245 (citing 28 U.S.C. § 2244(d)(1)) (footnote omitted). Pursuant to section 2244, the limitations period:

> shall run from the latest of–
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A)-(D).

Of the possible starting date, only section 2244(d)(1)(A) is relevant to the instant action. Petitioner does not suggest an alternative calculation of the commencement date of the AEDPA limitations period. Nor does Petitioner assert: that he was impeded from filing his federal habeas petition due to state action in violation of the Constitution or laws of the United States; a newly-recognized right; or that his Petition is predicated on newly-discovered facts that could not have been discovered earlier through the exercise of due diligence. *See* 28 U.S.C. § 2244(d)(1)(B)-(D).

For Arizona petitioners who enter a guilty plea, like Petitioner herein, a petition for post-conviction relief filed under Rule 32 of the Arizona Rules of Criminal Procedure, in lieu of a direct appeal, is considered a form of "direct review" within the meaning of 28 U.S.C. §2244(d)(1). *See Summers,* 481 F.3d at 716-17 (referring to such post-conviction relief

proceedings as "Rule 32 of-right proceedings..." and concluding that "[b]ecause a Rule 32 of-right proceeding is a form of direct review, AEDPA's one year statute of limitations does not begin to run until the conclusion of the Rule 32 of-right proceeding and review of that proceeding, or until the expiration of time for seeking such proceeding or review."); *see also* 28 U.S.C. §2244(d)(1)(A) (stating that the judgment becomes final at the later of either the conclusion of direct review or the expiration of time for seeking such review). Therefore, Petitioner's conviction became final on December 1, 2005, when Petitioner's opportunity to petition the Arizona Court of Appeals for review expired. *See Id.* (*See also* Answer, Exh. DD; *supra*, at n.6). Although direct review is not normally complete until the time for filing a petition for a writ of *certiorari* to the United States Supreme Court has expired, *See Bowen v. Roe,* 188 F.3d 1157, 1159 (9th Cir. 1999), *certiorari* can only be sought following a decision or denial of discretionary review by the state court of last resort, *i.e.,* the Arizona Supreme Court. *See* Sup.Ct.R. 13. Because Petitioner did not seek discretionary review from the Arizona Supreme Court, the time for filing a petition for a writ of *certiorari* to the United States Supreme Court does not factor into the statute of limitations calculation herein. Consequently, Petitioner's conviction became final on December 1, 2005.

Petitioner's unsuccessful attempt on October 2, 2006 to file an untimely petition for appellate-court review of the trial court's July 29, 2005 denial of his of-right PCR Petition does not alter the determination that Petitioner's conviction became final on December 1, 2005. The law is settled that in cases where the petitioner, like Petitioner herein, does not seek review of the trial court's denial of his of-right PCR Petition, the conviction becomes final upon the expiration of the time for seeking such review. *Summers,* 481 F.3d at 716-17. In Petitioner's case, the time for seeking appellate court-review expired on December 1, 2005. Moreover, the Ninth Circuit has flatly rejected the contention that a state court's dismissal of an untimely notice of appeal constitutes the conclusion of direct review under section 2244(d)(1)(A):

> If the one-year limitations period were made contingent on the resolution of a petitioner's attempt to file an untimely notice of appeal, a petitioner could indefinitely delay the commencement of the one-year period by simply waiting

> to file such notice until after the normal expiration date. Sanctioning this procedure would undermine the statute of limitations for federal habeas petitions.

*Randle v. Crawford,* 578 F.3d 1177, 1183 (9th Cir. 2009) (state court order dismissing state appeal as untimely "did not constitute 'the conclusion of direct review' pursuant to section 2244(d)(1)(A)) .

B. Statutory Tolling

On December 1, 2005, the date Petitioner's conviction became final, Petitioner's November 22, 2005 Second PCR Petition was pending before the state trial court. Under section 2244(d)(2), "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under..." section 2244(d). 28 U.S.C. §2244(d)(2). Thus, pursuant to section 2244(d)(2), the period during which Petitioner's Second PCR Petition was pending tolls the AEDPA statute of limitations. The trial court denied Petitioner's Second PCR Petition on December 7, 2005. (Answer, Exh. FF). Petitioner initially had thirty days to file a petition for review, *see* Ariz.R.Cr.P. 32.9, however, the trial court granted Petitioner's request for an additional 30 days, until February 6, 2006, to make such filing. (Answer, Exh. GG, HH. *See also, supra,* at n.7). Petitioner did not file a motion for rehearing or a petition for review regarding the trial court's denial of his Second PCR Petition. With regard to statutory tolling under section 2244(d)(2), only an appeal that is timely will toll the statute of limitations for the time period between the lower court's adverse decision and the filing of a notice of appeal in the higher court. *See Evans v. Chavis,* 546 U.S. 189, 191 (2006). Because Petitioner failed to seek review by the Arizona Court of Appeals regarding the trial court's denial of his Second PCR Petition, the statute of limitations herein was tolled pursuant to section 2244(d)(2) until December 7, 2005–the date the trial court denied Petitioner's Second PCR Petition. *See Id.* Thus, the AEDPA statute of limitations commenced to run the following day, December 8, 2005, and absent any subsequent tolling, expired one year later on December 8, 2006. *See* Fed.R.Civ.P. 6(a)(1) (in computing any period of time prescribed by any applicable statute, "[e]xclude the

day of the act, event or default that begins the period."); *Patterson,* 251 F.3d 1243 (applying former verison of Fed.R.Civ.P. 6(a) to AEDPA). Petitioner waited until November 18, 2007, almost one year after the expiration of the AEDPA statute of limitations, to seek federal habeas relief.

Petitioner's unsuccessful attempt on October 2, 2006 to file an untimely petition for review of the trial court's July 29, 2005 denial of his of-right PCR Petition does not qualify for statutory tolling under section 2244(d)(2). Such motion is clearly not an "application for State post-conviction or other collateral review..." and even if it were, such proceeding was not "properly filed" under section 2244(d)(2) given the state appellate court's determination of untimeliness. 28 U.S.C. §2244(d)(2); *Allen v. Siebert,* 552 U.S. 3, 4 (2007) (because petitioner's "petition for state postconviction relief was rejected as untimely by the...[state] courts, it was not 'properly filed' under section 2244(d)(2)."); *Pace v. DiGuglielmo,* 544 U.S. 408, 416-17 (2005) (untimely action for post-conviction relief is not properly filed for purposes of section 2244(d)(2) and, therefore, does not toll the AEDPA limitations period).

Nor does Petitioner's act of filing a Third PCR Petition on November 28, 2007 alter the statute of limitations calculation in this case. It is clear on the instant record that Petitioner's Third PCR Petition was filed after the expiration of the AEDPA limitations period. A state post-conviction relief proceeding filed after expiration of the AEDPA statute of limitations period has no effect whatsoever on the statute of limitations calculation because such state proceeding can neither revive the limitations period nor toll the already-expired period. *See Ferguson v. Palmateer,* 321 F.3d 820, 823 (9th Cir. 2003) ("[S]ection 2244(d) does not permit the reinitiation of the limitations period that has ended before the state petition was filed."); *Jiminez v. Rice,* 276 F.3d 478, 482 (9th Cir. 2001) (where petitioner filed his state post-conviction relief proceeding "after the AEDPA statute of limitations ended...[t]hat delay resulted in an absolute time bar..."); *Rashid v. Khulmann,* 991 F.Supp. 254, 259 (S.D.N.Y. 1998) ("Once the limitations period is expired, collateral petitions can no longer serve to avoid a statute of limitations.").

C. Equitable Tolling

Respondents argue that in light of the U.S. Supreme Court's decision in *Bowles v. Russell,* 551 U.S. 205 (2007), the AEDPA is not subject to equitable tolling. (*See* Answer at pp. 15-16). The Ninth Circuit has acknowledged that the Supreme Court has never explicitly determined whether section 2244(d) allows for equitable tolling. *Waldron-Ramsey v. Pacholke,* 556 F.3d 1008, 1011 n. 2 (9th Cir. 2009), *cert. denied,* __ U.S. __, __ S.Ct.__, 2009 WL 2058179 (Oct. 5, 2009). *See also Harris v. Carter,* 515 F.3d 1051, 1054 n.4, *cert. den. by Brunson v. Harris,* __ U.S. __, 129 S.Ct. 397 (2008). However, the Ninth Circuit has specifically held that "*Bowles* did not invalidate equitable tolling of the AEDPA statute of limitations." *Waldron-Ramsey,* 556 F.3d at 1011 n.2. Therefore equitable tolling remains viable for Petitioner herein.

"Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace,* 544 U.S. at 418. *See also Waldron-Ramsey,* 556 F.3d at 1011. Additionally, "[a] petitioner must show that his untimeliness was caused by an external impediment and not by his own lack of diligence." *Bryant v. Arizona Attorney General,* 499 F.3d 1056, 1061 (9th Cir. 2007). *See also Waldron-Ramsey,* 556 F.3d at 1011 (an external force must cause the untimeliness, and thus, mere oversight, miscalculation or negligence on the petitioner's part would preclude the application of equitable tolling). The petitioner must also establish that the extraordinary circumstances asserted were, in fact, the reason why the federal habeas petition was untimely. *Spitsyn v. Moore,* 345 F.3d 796, 799 (9th Cir. 2003). A *pro se* petitioner's "lack of legal sophistication is not, by itself, an extraordinary circumstance warranting equitable tolling." *Raspberry v. Garcia,* 448 F.3d 1150, 1154 (9th Cir. 2006). Moreover, in considering a claim of language barrier under the equitable tolling doctrine, the Ninth Circuit has "conclude[d] that a non-English-speaking petitioner seeking equitable tolling must, at a minimum, demonstrate that during the running of the AEDPA time limitation, he was unable, despite diligent efforts, to procure either legal materials in his own language or translation assistance from an inmate, library personnel, or

other source." *Mendoza v. Carey,* 449 F.3d 1065, 1071 (9th Cir. 2006) (footnote omitted).

Petitioner has not argued to this Court that equitable tolling is warranted. Nor does the record reflect that Petitioner pursued his rights diligently and that some extraordinary circumstance stood in his way. Accordingly, equitable tolling of the statute of limitations period herein is not warranted on the instant record.

### III. CONCLUSION

The AEDPA limitations period in Petitioner's case expired on December 8, 2006. Petitioner did not submit the instant Petition for Writ of Habeas Corpus until November 18, 2007–almost one year after expiration of the AEDPA statute of limitations. Consequently, Petitioner's Petition for Writ of Habeas Corpus is untimely filed and barred from federal court review. Because the Petition is untimely, the Court need not address Respondents' alternative argument that all of Petitioner's claims are procedurally defaulted.

### IV. RECOMMENDATION

For the foregoing reasons, the Magistrate Judge recommends that the District Court, after its independent review, dismiss Petitioner's Petition for Writ of Habeas Corpus. (Doc. No. 1).

Pursuant to 28 U.S.C. §636(B), an party may serve and file written objections within ten days after being served with a copy of this Report and Recommendation. If objections are filed, the parties should use the following case number: **CV 07-2491-PHX-PGR.** A party may respond to another party's objections within ten days after being served with a copy thereof. *See* Fed.R.Civ.P. 72(b).

If objections are not timely filed, then the parties' right to *de novo* review by the District Court may be deemed waived. *See United States v. Reyna-Tapia,* 328 F.3d 1114, 1121 (9th Cir.) (*en banc*), *cert. denied,* 540 U.S. 900 (2003).

DATED this 30th day of October, 2009.

_____
Héctor C. Estrada
United States Magistrate Judge

- 15 -